**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Criminal Case No. 1:20-cr-83-WJM

**UNITED STATES OF AMERICA,**

v.

**MYKALAI KONTILAI,**
    a/k/a/ Michael Contile

       **Defendant.**

## INDICTMENT

### THE GRAND JURY CHARGES:

The Grand Jury charges that:

I. **INTRODUCTION**

At all times relevant hereto:

### a. *Defendant and Related Entities*

1.     Collector's Coffee Inc., doing business as Collector's Coffee, Ultimate Collector Inc., and Collector's Cafe, was incorporated in the State of California in or about August 2007 and in the State of Nevada in or about November 2007. Collector's Coffee was a privately funded company with its headquarters in Las Vegas, Nevada, and, at various times referenced in

this Indictment, had offices in Las Vegas, Nevada; southern California; and New York, New York. As of June 4, 2019, Collector's Coffee remained incorporated in the State of Nevada.

2. Defendant MYKALAI KONTILAI ("KONTILAI"), also known as Michael Contile, was a founder of Collector's Coffee in 2007, and served as its President, Secretary, Treasurer, Director, and Chief Executive Officer from in or about June 2009, through in or about November 2019. KONTILAI also served as President, Chief Executive Officer, and Director of Collector's Coffee from in or about 2007 through 2009. KONTILAI's responsibilities included managing financial accounts, raising capital through pitching Collector's Coffee to potential investors, negotiating and executing business relationships, making staffing decisions, and overseeing the day-to-day operations of the business. KONTILAI was the primary shareholder of Collector's Coffee and the owner of the majority of all existing common shares of the company, which were the only Collector's Coffee stock with voting rights.

3. Employee A was a resident of Las Vegas, Nevada. Employee A met KONTILAI in or about 2002 and served as the Chief Operating Officer ("COO") of Collector's Coffee from in or about 2015 through in or about 2016. As COO, Employee A reported to KONTILAI. Prior to 2015, Employee A was not an employee or director of Collector's Coffee.

4. Co-founder A was a resident of California. In or about 2007, Co-founder A and KONTILAI co-founded Collector's Coffee. Between 2007 and 2010, Co-founder A served in various positions in Collector's Coffee including Secretary, Treasurer, and Director.

### b. Other Relevant Entities

5. The United States Securities and Exchange Commission ("SEC" or "the Commission") is an agency of the Federal Government, with its headquarters located in Washington in the District of Columbia and regional offices located throughout the country,

including Denver and New York. The SEC is empowered under the Securities Exchange Act of 1934 ("Exchange Act") and the Securities Act of 1933 ("Securities Act") to investigate violations of any rule or regulation prescribed by Title 15 of the United States Code.

6. In or about 2017 through in or about 2018, Attorney A was an attorney and partner at Law Firm. Attorney A worked out of Law Firm's offices in New York, New York. Attorney B was an attorney and associate at Law Firm in New York, New York, and worked with Attorney A. In or about the end of 2017, Collector's Coffee retained Law Firm to represent it in an investigation before the SEC.

### c. *The SEC Investigation and Production of Documents*

7. On or about September 19, 2017, the Commission issued an Order Directing Private Investigation and Designating Officers to Take Testimony ("Order") concerning possible violations of the Securities Act and the Exchange Act by Collector's Coffee and its officers, directors, employees, partners, subsidiaries, and/or affiliates.

8. The Order alleged possible violations in which Collector's Coffee and those acting on its behalf sold or bought shares of Collector's Coffee without a registration statement on file with the Commission, and for which no exemption was available. The Order also alleged possible fraud by Collector's Coffee and its employees. The allegations concerned possible misstatements and omissions concerning the value of Collector's Coffee's assets, Collector's Coffee's business plan and the state of Collector's Coffee's development, and the use of investor funds.

9. The Commission ordered that an investigation be made to determine whether any persons or entities had engaged in, or were about to engage in, any of the reported acts or practices or any acts or practices of similar purport or object. The Commission further

designated certain members of Commission Staff as officers of the Commission ("designated SEC Officers"), empowered to administer oaths and affirmations, subpoena witnesses, compel their attendance, take evidence, and require the production of any books, papers, correspondence, memoranda, or other records deemed relevant or material to the inquiry, and to perform all other duties in connection therewith as prescribed by law.

10. On or about September 21, 2017, designated SEC Officers located in the SEC regional office in Denver, Colorado issued a subpoena to Collector's Coffee for documents. The subpoena requested, among other items, "23. Copies of all employment agreements,… 25. Documents concerning all sources of funding for Collector's Cafe since January 1, 2008, including without limitation, documents regarding all outstanding loans, debt obligations, and/or financings,… [and] 27. Documents concerning all transactions, agreements, and/or affiliations entered into by Collector's Café."

11. Following receipt of the SEC's subpoena, KONTILAI caused the fabrication of certain documents that he provided to his attorneys so they could be produced to the SEC in response to the SEC's subpoena, including the following:

   a. *False Employment Agreement*: The 13-page document purported to set forth the terms of KONTILAI's employment as President and CEO of Collector's Coffee. The "employment agreement" had a date of May 14, 2007 and stated that KONTILAI would be paid a salary of $300,000 per year. The final page of the agreement showed signatures allegedly belonging to KONTILAI and "[Employee A], Chairman."

   b. *False Convertible Note*: The document purported to set forth the terms of a loan for $5 million to Collector's by KONTILAI on June 11, 2007. The note listed the parties to the agreement as "[Employee A], Chairman and Mykalai Kontilai." Appended to the note was

4

a falsified Bank of America statement (the "fake bank statement")). The fake bank statement showed a "June 11 through June 29, 2007" statement for a Bank of America account XXXXX-X8011. The fake bake statement showed an ending balance of $4,999,065.00, when the actual balance at the time was $935.00.

12. On or about May 12, 2018, KONTILAI transmitted by email the false convertible note, fake bank statement, and employment agreement ("fake documents") to Attorney A. On or about May 14, 2018, Attorney A sent by FedEx from his offices in New York City documents purporting to be responsive to the subpoena to the SEC's headquarters, in Washington, D.C., including the fake documents. These documents were then uploaded to an SEC database and reviewed electronically by designated SEC Officers in Denver, Colorado.

### d. *SEC Investigative Testimony*

13. On or about May 16 and 17, 2018, KONTILAI testified pursuant to an SEC subpoena issued by designated SEC Officers in Denver, Colorado. Attorney A represented KONTILAI during his official investigative testimony, which was taken in Denver, Colorado by designated SEC Officers. KONTILAI falsely testified that he loaned Collector's Coffee $5 million of his own money through a convertible note when the company started in 2007. Attorney A represented to the SEC on the record that the note "was in the production we made Monday[,]" referring to the false convertible note, which was included in the May 14 production.

14. KONTILAI went on to testify that he did not have a personal record of how much money the company owed him on the loan or in back payments for salary under the terms of his employment agreement. KONTILAI testified that he was not aware of any documents that tracked what Collector's Coffee had paid him to date. KONTILAI further testified, "the company repaid me money that it owed me through paying some of those personal credit card

5

expenses[,]" and noted, "I'm owed millions of dollars more tha[n] I've taken out."  In addition to charging personal expenses to company credit cards, KONTILAI testified that he "took money out [of Collector's Coffee's bank accounts] to repay some of my notes."

### e. *Statements Made to SEC Regarding "Employment Agreement"*

15.     When Attorneys A and B discovered that the Employment Agreement provided to the SEC on or about May 14, 2018 had been fabricated, they called KONTILAI on or about July 30, 2018.  KONTILAI denied knowing about the fabrication, stated that he had received the employment agreement from Employee A, and directed his attorneys to contact Employee A.

16.     After KONTILAI spoke to Attorneys A and B, KONTILAI directed Employee A to falsely tell Attorneys A and B that Employee A had recreated the Employment Agreement from memory of the original employment agreement, knowing that Employee A's false and misleading statements would be shared with the SEC.  Then, on the same day, Attorneys A and B called Employee A about the employment agreement.  Employee A repeated to Attorneys A and B the lie that KONTILAI had asked Employee A to tell.  KONTILAI knew his attorneys would rely on his and Employee A's false statements when communicating with the designated SEC Officers.

17.     Following their call with Employee A on or about July 30, 2018, Attorneys A and B helped Employee A obtain new counsel, Attorney C.  At the direction of KONTILAI, Employee A told Attorney C the same lies Employee A told Attorneys A and B, that is Employee A had recreated the employment agreement for KONTILAI in 2018 and provided it to him to give to Attorneys A and B.

18.     On or about October 2, 2018, Attorneys A, B, and C, had a telephone call with SEC Attorney A, a designated SEC Officer who was located at the SEC's regional office in

Denver, Colorado. Attorney C told SEC Attorney A that Employee A had recreated the employment agreement in 2018 from her memory of an original agreement that Employee A had executed as Chairman of Collector's Coffee in 2007 with KONTILAI, when in fact Employee A had never executed such an agreement either in 2007 or any time after that.

### f. *Statements Made to Counsel Regarding Other Documents*

19. Between on or about July 30, 2018, and on or about October 2, 2018, KONTILAI directed Employee A to falsely tell Attorneys A, B, and C that Employee A had provided other documents to KONTILAI to forward to Attorneys A and B. Employee A agreed and falsely told Attorney C that Employee A provided additional documents to KONTILAI when she did not provide them to KONTILAI and had never seen them before. The documents were allegedly Collector's Coffee shareholder and board resolutions dated in 2007 that contained signatures of KONTILAI and Employee A. Two of these documents purported to grant KONTILAI the ability to lease housing for KONTILAI in New York, New York, paid for by Collector's Coffee and charge his personal expenses and those of his spouse to a Collector's Coffee credit card, and submit his personal credit card bills and those of his spouse to Collector's Coffee for payment.

20. On or about October 2, 2018, when Attorneys A, B, and C spoke to SEC Attorney A on the telephone, Attorney C told SEC Attorney A that Employee A had copies of agreements and board resolutions for Collector's Coffee. Attorneys A, B, and C did not provide these documents to the SEC.

### g. *Statements Made to Counsel Regarding Fake Bank Statement*

21. On or about October 2, 2018, Attorneys A and B began to question the authenticity of the bank statement produced with the convertible note to the SEC on May 14, 2018.

7

22.     On or about October 3, 2018, KONTILAI told Attorney A that Employee A sent him the convertible note with the bank statement in 2018.  KONTILAI told Employee A that he created a loan document and asked Employee A to tell the attorneys that Employee A had provided the loan document to KONTILAI.   Employee A agreed and falsely told Attorney C that Employee A had provided the bank statement to KONTILAI in 2018 so that he could provide it to Attorney A.

## COUNT ONE
### (Conspiracy to Obstruct Proceedings)
### (18 U.S.C. § 1512(k))

23.     The allegations in paragraphs 1 through 22 of this Indictment are hereby re-alleged as if set out in full and incorporated herein by reference.

24.     From on or about July 30, 2018, up to and including October 3, 2018, in the State and District of Colorado and elsewhere, the defendant, MYKALAI KONTILAI, did knowingly, that is, with the intent to further the objects of the conspiracy, and willingly combine, conspire, confederate, and agree with Employee A to corruptly obstruct, influence, and impede an official proceeding, to wit, a formal investigation of the United States Securities and Exchange Commission, and to attempt to do the same, in violation of Title 18, United States Code, Section 1512(c)(2).

### PURPOSE OF THE CONSPIRACY

25.     The purpose of the conspiracy was for KONTILAI and his co-conspirators to mislead the designated SEC Officers in an official federal agency proceeding pertaining to Collector's Coffee in order to obstruct, hinder, and impede the SEC's enforcement of federal securities laws.

## MANNERS AND MEANS OF THE CONSPIRACY

26. KONTILAI and others misled, impeded, and obstructed a formal SEC investigation, and attempted to do so, by making and causing others to make false and misleading statements about money KONTILAI took from Collector's Coffee, and about the authenticity of fabricated documents that KONTILAI used to justify the money he took, as further detailed in paragraphs 14 through 22 of this Indictment.

All in violation of 18 U.S.C. Section 1512(k).

## COUNT TWO
### (Obstruction of Proceedings)
### (18 U.S.C. §§ 1512(c)(2), 2)

27. The allegations in paragraphs 1 through 22, 25, and 26 of this Indictment are hereby re-alleged as if set out in full and incorporated herein by reference.

28. On or about May 12, 2018, in the State and District of Colorado and elsewhere, the defendant, MYKALAI KONTILAI, did corruptly obstruct, influence, and impede, and did corruptly attempt to obstruct, influence, and impede an official proceeding, that is, a formal investigation of the United States Securities and Exchange Commission, by falsifying a document, to wit, an employment agreement between himself and Collector's Coffee, that he knew would be provided to the Securities and Exchange Commission.

All in violation of Title 18, United States Code, Section 1512(c)(2).

## COUNT THREE
### (Obstruction of Proceedings)
### (18 U.S.C. §§ 1512(c)(2), 2)

29. The allegations in paragraphs 1 through 22, 25, and 26 of this Indictment are hereby re-alleged as if set out in full and incorporated herein by reference.

30. On or about July 30, 2018, in the State and District of Colorado and elsewhere, the defendant, MYKALAI KONTILAI, did corruptly obstruct, influence, and impede, and did corruptly attempt to obstruct, influence, and impede an official proceeding, that is, a formal investigation conducted by the United States Securities and Exchange Commission, by making false statements to his counsel regarding an employment agreement between himself and Collector's Coffee for the purpose of communicating the false statements to the Securities and Exchange Commission.

All in violation of Title 18, United States Code, Section 1512(c)(2).

## COUNT FOUR
### (Tampering with Documents)
### (18 U.S.C. §§ 1512(c)(1), 2)

31. The allegations in paragraphs 1 through 22, 25, and 26 of this Indictment are hereby re-alleged as if set out in full and incorporated herein by reference.

32. On or about May 12, 2018, in the State and District of Colorado and elsewhere, the defendant, MYKALAI KONTILAI, did corruptly alter and attempt to alter a document, to wit, a bank statement, with the intent to impair its integrity and availability for use in an official proceeding, that is, a formal investigation of the United States Securities and Exchange Commission.

All in violation of Title 18, United States Code, Section 1512(c)(1).

## COUNTS FIVE AND SIX
### (False Statements)
### (18 U.S.C. § 1001(a)(2))

33. The allegations in paragraphs 1 through 22, 25, and 26 of this Indictment are hereby re-alleged as if set out in full and incorporated herein by reference.

34. On or about the dates below, MYKALAI KONTILAI did willfully and knowingly make a materially false, fictitious, and fraudulent statement and representation in a matter within the jurisdiction of the executive branch of the Government of the United States, by making the below false statements to designated SEC Officers during testimony taken in Denver, Colorado, in the District of Colorado:

| Count | Date | False Statement |
|---|---|---|
| 5 | 5/16/18 | When asked how much salary Collector's Coffee owed him, MYKALAI KONTILAI testified: "I signed a contract in 2007 to be paid $300,000 a year the first year and then $500,000 a year thereafter," when, in fact, as KONTILAI then and there knew, there was no employment contract signed in 2007 that entitled him to be paid the amounts he stated. |
| 6 | 5/16/18 | When asked how much money he loaned Collector's Coffee when it started, MYKALAI KONTILAI testified, "The first note was 5 million dollars," when, in fact, as KONTILAI then and there knew, there was no note documenting a loan by KONTILAI to Collector's Coffee in the amount of $5 million. |

All in violation of Title 18, United States Code, Section 1001(a)(2).

A TRUE BILL:

<u>Ink signature on file in Clerk's Office</u>
Foreperson

                              ROBERT ZINK
                              CHIEF, FRAUD SECTION
By:   <u>/s Emily C. Scruggs</u>
       Emily Scruggs
       Trial Attorney
       Criminal Division, Fraud Section
       1400 New York Avenue, NW
       Washington, DC 20530
       (202) 616-2488
       Emily.Scruggs@usdoj.gov